WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER, LLP
Attorneys for Defendant
UNIVERSAL PROTECTION SERVICE
1133 Westchester Avenue
White Plains, NY 10604
(914) 323-7000
File No. 20147.00019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
MICHAEL BENZINGER,

                    Plaintiff,                      Docket No.:18-cv-02709(KPF)

    -against-

NYSARC, INC. NEW YORK CITY CHAPTER, CBRE,
INC. and UNIVERSAL PROTECTION SERVICE, LLC,

                    Defendants.
---------------------------------------------------------------X


# UNIVERSAL PROTECTION SERVICE'S MEMORANDUM OF LAW IN

## SUPPORT OF ITS MOTION TO DISMISS

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ............................................................................ ii

UNIVERSAL PROTECTION SERVICE'S MEMORANDUM OF LAW ...................... 1

INTRODUCTION ................................................................................... 1

PROCEDURAL HISTORY......................................................................... 3

STATEMENT OF FACTS ......................................................................... 3

    Plaintiff's Second Amended Complaint ................................................. 3

ARGUMENT ......................................................................................... 4

I.    Standard for Motion to Dismiss Pursuant to F.R.C.P. 12(b)(6)................. 4

II.    Plaintiff's § 1981 Claims Fail as a Matter of Law ...................................... 5

    A.    The alleged conduct does not rise to the level of discrimination ................................................................. 6

    B.    Plaintiff's enumerated rights were not interfered with by any party.......................................................................... 7

    C.    The UPS Employee Was Not Acting Within the Scope of His Employment and UPS Cannot be held liable .......................... 9

III.    Plaintiff's § 1985 Conspiracy Claim Fails as a Matter of Law................. 10

IV.    Plaintiff's NYCHRL Claims Fail as a Matter of Law .............................. 12

    A.    Plaintiff's NYCHRL 8-107(4) fails because UPS cannot be held liable for the alleged actions of its employee........................ 12

    B.    Plaintiff's NYCHRL claims fail on the merits ............................ 12

    C.    Plaintiff's claim for aiding and abetting under the NYCHRL fails .......................................................... 13

    D.    Plaintiff's claim for retaliation under the NYCHRL fails ........... 14

V.    Plaintiff's Claim for Negligent Supervision Fails .................................... 15

VI.    The Court Should Decline to Exercise Jurisdiction Over the State Claims ................................................................................... 15

CONCLUSION....................................................................................... 16

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

Ashcroft v. Iqbal,
556 U.S. 662 (2009)..............................................................................................4, 14

Bell Atl Corp. v. Twombly,
550 U.S. 544 (2007)..............................................................................................4, 14

Bishop v. Best Buy,
Co. Inc. 2010 WL 4159566 (S.D.N.Y. Oct. 13, 2010) ............................................9

Bishop v. Toys R Us-NY LLC,
414 F.Supp2d 385 (S.D.N.Y. 2006) .........................................................5, 6, 8, 9, 10

Brightman v. Prison Health Serv., Inc.
108 A.D.3d 739, 970 N.Y.s.2d 789 (2nd Dept. 2013) ............................................14

Carnegie-Mellon University v. Cohill,
484 U.S. 343 (1988)................................................................................................16

Clark v. City of New York,
2014 WL 4804237 (E.D.N.Y. Sept. 25, 2014) ...........................................................5

Cushing v. Moore,
970 F.2d 1103 (2d Cir. 1992) ..................................................................................16

Davis v. Megabus Northeast LLC,
301 F.Supp.3d 105 (D.D.C. 2018)...........................................................................10

Farmer v. American Home Medical Equipment and Services, Inc.,
2018 WL 878367 (E.D. Pa. Feb. 14, 2018) .......................................................6, 8, 9

Feacher v. Intercontinental Hotels Group,
563 F.Supp.2d 389 (N.D.N.Y. 2008).........................................................................6

Fruchtman v. City of New York,
129 A.D.3d 500 (1st Dept. 2015) .............................................................................12

Garrigan v. Ruby Tuesday, Inc.
2014 WL2134613 (S.D.N.Y. May 22, 2014) ..........................................................12

Goonewardena v. North Shore Long Island Jewish health System,
2012 WL 7802351 (E.D.N.Y. Nov. 5, 2012)...........................................................11

Halebian v. Berv,
644 F.3d 122 (2d Cir.2011) .......................................................................................4

7191948v.2

Honohan v. Martin's Food of S. Burlington,
  255 A.D.2d 627, 679 N.Y.S.2d 478 [1998] ................................................................ 15

In re Harbinger,
  2013 WL 5441754 ................................................................................................... 5

Iqbal v. Hasty,
  490 F.3d 143 (2d Cir.2007) ..................................................................................... 11

Kassner,
  496 F.3d at 237 ....................................................................................................... 4

Lorenz v. Managing Director, St. Luke's Hosp.,
  2010 WL 4922267 (S.D.N.Y. Nov. 5, 2010) ............................................................ 7

Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.,
  7 F.3d 1085 (2d Cir. 1993) ...................................................................................... 5

Morpurgo v. Inc. Village of Sag Harbor,
  697 F.Supp.2d 309 (E.D.N.Y. 2010) ...................................................................... 11

Steinborn v. Himmel,
  9 A.D.3d 531, 780 N.Y.S.2d 412 [2004] ................................................................ 15

United Bhd. Of Carpenters & Joiners of Am. V. Scott,
  463 U.S. 825, 103 S.Ct. 3352 77 L.Ed.2d 1049 (1983) .......................................... 11

Valencia v. Lee,
  316 F.3d 299 (2d Cir. 2003) ................................................................................... 16

Wecker v. City of New York,
  134 A.D.3d 474 (1st Dept. 2015) ............................................................................ 12

Williams v. Lindenwood Univ.,
  288 F.3d 349 (8th Cir. 2002) ................................................................................... 5

Youngblood v. Hy-Vee Food Stores, Inc.,
  266 F.3d 851 (8th Cir. 2001), cert. denied, 535 U.S. 1017 (2002) ........................... 5

Yusuf v. Vassar Coll.
  35 F.3d 709 (2d Cir. 1994) ...................................................................................... 5

Zakrzewska v. New School,
  928 N.E.2d 1035 (N.Y. 2010) ................................................................................ 12

**Statutes**

28 U.S.C. § 1367(a) .................................................................................................. 15

42 U.S.C. § 1981 ....................................................................................... 1, 5, 6, 7, 8, 9, 10, 16

42 U.S.C. § 1981(a) ................................................................... 2, 5, 6

42 U.S.C. § 1985 .................................................................... 1, 10, 16

42 U.S.C. § 1985(3) ................................................................. 10, 11

New York City Human Rights Law § 8-107(4)............................... 1, 11, 12

New York City Human Rights Law § 8-107(6)................................... 1

New York City Human Rights Law § 8-107(7)............................... 1, 13, 14

**Rules**

Federal Rules of Civil Procedure, Rule 12(b)(6) ............................ 1, 4, 16

Federal Rules of Civil Procedure, Rule 56 ..................................... 1

## UNIVERSAL PROTECTION SERVICE'S MEMORANDUM OF LAW

## INTRODUCTION

Defendant UNIVERSAL PROTECTION SERVICE, LLC ("UPS"), respectfully submits this Memorandum of Law in support of its Motion to Dismiss the Second Amended Complaint ("SAC") and each claim asserted therein pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, or alternatively, in support of its motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

Plaintiff has brought this action against UPS pursuant to, *inter alia*, 42 U.S.C. §§ 1981, 1985, and New York City Human Rights Law §§8-107(4), 8-107(6), and 8-107(7), arising out of discriminatory conduct Plaintiff alleges he was subjected to in the lobby of the premises located at 83 Maiden Lane, New York, New York.  UPS is a privately owned company, providing security services to the subject premises, in addition to multiple locations throughout the United States.

The SAC is subject to dismissal as to UPS on several grounds.  As an initial matter, the conduct Plaintiff alleges UPS employee engaged in was not within the scope of his employment, and therefore UPS cannot be held liable pursuant to the common law doctrine of *respondeat superior*, which this Circuit has expressly held applies to § 1981 claims.

Regarding the claims themselves, they are insufficient as a matter of law because the allegations against UPS do not rise to the level of a constitutional violation.  Plaintiff alleges that a UPS employee laughed and made a vague, non-discriminatory comment when codefendant NYSARC's employee allegedly uttered racial slurs to Plaintiff.  These allegations by themselves preclude Plaintiff's § 1981 claim because neither the alleged laughter nor the vague comment could be considered discriminatory under any set of circumstances.

Next, Plaintiff fails to allege that UPS interfered with any of his protected rights under §1981, including his right to make and enforce contracts, to sue, be a party, give evidence, or his

1

right to full and equal benefit of all laws and proceedings for the security of persons and property.  42 U.S.C. § 1981(a).  Plaintiff alleges that he went to the premises in order to enter into a transaction with his health care provider, Access Community Health Center.  Plaintiff successfully executed these transactions with Access on both occasions when Plaintiff alleges the discriminatory conduct occurred.

While the SAC seems to suggest that Plaintiff was denied security services, these services do not entail a contractual relationship, either express or implied, between UPS and any individual entering the premises.  To the extent the Plaintiff is alleging a violation of his right to full and equal benefit of the law, Plaintiff must allege he was denied the benefit of a specific law or proceeding, and he has failed to do so here.  The other rights enumerated under the statute are inapplicable, and this claim is wholly without merit.

Plaintiff's federal conspiracy claim must fail because the underlying conduct does not rise to the level of a constitutional violation, and there can be no conspiracy to cover up the alleged conduct where it did not violate any law.  Crucially, Plaintiff does not allege that UPS engaged in any conspiracy, but rather claims that employees of the codefendants conspired to cover up the alleged conduct.

Because the federal claims must be dismissed, the Court should decline to exercise jurisdiction over the state law claims.  On their merits, the state law claims under the NYCHRL fail for the same reasons noted above:  Plaintiff cannot prevail on his claims against UPS where he merely alleges the UPS employee laughed and made a vague comment that had nothing to do with Plaintiff's race, and further fails to allege the denial of any right.  UPS likewise cannot be held liable for aiding and abetting where this claim is based on the same non-discriminatory conduct.

Plaintiff's claim for retaliation under the NYCHRL is based solely on the allegation that an investigator called him and monitored his social media activity.  Plaintiff does not allege that

UPS was involved in hiring this investigator. Regardless, in order to state a claim for retaliation, the alleged retaliatory conduct must be severe enough that it would deter a reasonable person from making a complaint of discrimination. A phone call and "monitoring" on social media are woefully inadequate to state a claim for retaliation, and this claim must also be dismissed.

## PROCEDURAL HISTORY

On or about February 28, 2018, Plaintiff filed an action in the Supreme Court of New York, New York County, against defendants CBRE, Inc. and NYSARC Inc., New York City Chapter. On or about March 27, 2018, the case was removed to the Southern District of New York. (Dkt. #6.) On May 3, 2018, Plaintiff filed a First Amended Complaint adding UPS as a defendant. (Dkt. #18.)

On July 31, 2018, an initial conference was held. Pursuant to the Court's Order (Dkt. #34), Plaintiff was directed to file a Second Amended Complaint ("SAC") on or before August 10, 2018. All Defendants were directed to respond to the SAC on or before September 14, 2018. UPS was directed to file its motion to dismiss, if it elected to do so, on or before the same date. Plaintiff subsequently filed the SAC on August 10, 2018. (Dkt. #35.)

## STATEMENT OF FACTS

### Plaintiff's Second Amended Complaint

Plaintiff alleges he is Asian American. (SAC at ¶ 19.) Plaintiff alleges that on June 21, 2016, he visited the subject premises located at 83 Maiden Lane, New York, New York in order to make an appointment with his health care provider, Access Community Health Center ("Access"). (Id. at ¶ 20.) Plaintiff claims that as he passed through the lobby, Sammy Rivera, a porter employed by NYSARC, repeatedly uttered to him "Ni hao," Mandarin for "hello," and made derogatory remarks, which UPS security guard Justin Brooks allegedly laughed at. (Id.)

Plaintiff alleges that after making his appointment with Access, he exited the building through the lobby, at which time he was subjected to further discriminatory conduct by Mr.

Rivera, and Mr. Brooks laughed a second time.  (Id.)  On the next day, June 22, 2016, Plaintiff returned for his appointment at Access, which he successfully completed.  He also lodged a complaint with NYSARC regarding the alleged discriminatory conduct.  (Id. at ¶ 22.)  On exiting the building, Plaintiff claims he was subjected to further discrimination when Rivera made another derogatory comment, and Brooks stated "He ain't going to say nothing to you."  (Id. at ¶ 23.)

NYSARC thereafter conducted an investigation, which concluded that Rivera had stated "Ni hao" to the Plaintiff, but did not make any of the other alleged derogatory comments.  NYSARC drafted a report and statement, the latter of which was issued to the Plaintiff.  Plaintiff alleges that an investigator was hired by NYSARC to "harass" him, claiming that the investigator left voicemails on his phone on two consecutive days, and "monitored" social media related to the incident.  Plaintiff does not specify how many voicemails were left on his phone.  (Id. at ¶¶ 24-45.)

## ARGUMENT

### I.    Standard for Motion to Dismiss Pursuant to F.R.C.P. 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. At this stage, the Court must draw all reasonable inferences in favor of the non-moving party, see Kassner, 496 F.3d at 237, but it need not "accept as true a legal conclusion couched as a factual allegation," Twombly, 550 U.S. at 555.  In addition to the complaint itself, the Court may consider documents attached as exhibits, incorporated by reference, or relied upon by Plaintiffs in bringing suit, as well as judicially noticeable matters. See Halebian v. Berv, 644 F.3d 122, 131 n.

4

7 (2d Cir.2011); <u>In re Harbinger</u>, 2013 WL 5441754, at *15 n. 6.

## II.    <u>Plaintiff's § 1981 Claims Fail as a Matter of Law</u>

Section 1981 does not provide a general cause of action for race discrimination if in fact it occurred.  <u>Youngblood v. Hy-Vee Food Stores, Inc.</u>, 266 F.3d 851, 855 (8th Cir. 2001), <u>cert. denied</u>, 535 U.S. 1017 (2002).  The plaintiff must point to a violation of some specific right protected by § 1981.  <u>Williams v. Lindenwood Univ.</u>, 288 F.3d 349, 355 (8th Cir. 2002)(court holding that element of the plaintiff's prima facie case is a showing that "the discrimination concerned an area enumerated by the statute.")

To state a claim under § 1981, a plaintiff must make factual allegations sufficient to support findings that (1) plaintiff is a member of a racial minority; (2) defendant acted with intent to discriminate on the basis of race; and (3) defendant's discriminatory act constituted one or more of the activities enumerated in the statute.  <u>Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.</u>, 7 F.3d 1085, 1087 (2d Cir. 1993)(per curiam).  The rights enumerated under the statute include the right to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property.  42 U.S.C. § 1981(a).

With respect to the second element, a plaintiff "must specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of racially discriminatory intent" in order to survive a motion to dismiss. <u>Yusuf v. Vassar Coll.</u> 35 F.3d 709, 713 (2d Cir. 1994).

To satisfy the third element, the plaintiff must demonstrate that defendant's allegedly discriminatory act concerned contractual activities enumerated under the statute.  <u>Clark v. City of New York</u>, 2014 WL 4804237 at *3 (E.D.N.Y. Sept. 25, 2014).  "However, "'a claim for interference with the right to make and enforce contracts must allege the actual loss of a contract interest, not merely the possible loss of future contract opportunities.'" <u>Bishop v. Toys R Us-</u>

NY LLC, 414 F.Supp2d 385, 393(S.D.N.Y. 2006) (quoting Morris v. office Max, Inc. 89 F.3d 411, 414-15 (7th Cir. 1996).

With respect to an alleged interference with the right "to full and equal benefit of all laws and proceedings for the security of persons and property," (42 U.S.C. § 1981(a)), a plaintiff must allege (1) racial animus; (2) identify a relevant law or proceeding for the security of persons and property"; and (3) allege that defendants deprived plaintiff of the "full and equal benefit" thereof. Bishop, 414 F.Supp2d at 393 (quoting Phillip v. Univ. of Rochester, 316 F.3d 291, 298 (2nd Cir. 2003).

Crucially, in order to satisfy the third element, Plaintiff must produce evidence of something more than the same type of racially based, discriminatory conduct sufficient to support the second element of a § 1981 prima facie case.  Farmer v. American Home Medical Equipment and Services, Inc., 2018 WL 878367 at *5 (E.D. Pa. Feb. 14, 2018)(citations omitted).

A.  The alleged conduct does not rise to the level of discrimination

Plaintiff alleges that UPS employee Justin Brooks discriminated against him because Brooks laughed and commented that "He ain't going to say nothing to you."  Plaintiff fails to set forth any specific allegation as to how this comment could be considered discriminatory.  There is simply no case law that would support the proposition that laughter could be considered a discriminatory act, such that it would satisfy the second element of a § 1981 claim.  The alleged statement by Brooks, "He ain't going to say nothing to you," does not contain any reference to the Plaintiff's race, and Plaintiff's claim that this statement was racially motivated or contained some form of discriminatory intent is without merit.  See, e.g., Feacher v. Intercontinental Hotels Group, 563 F.Supp.2d 389 (N.D.N.Y. 2008)(holding insufficient evidence of racial discrimination where restaurant employee stated "What do you people want here?" to African American patrons).

B.  Plaintiff's enumerated rights were not interfered with by any party

The SAC specifically states that Plaintiff went to the premises to contract with his medical provider, Access, which he successfully did on both days that the alleged discriminatory conduct occurred.  Plaintiff did not go to the subject premises to enter into a contract with UPS, a provider of security services.  While Plaintiff alleges the NYSARC employee uttered racial slurs against him as he was proceeding to Access to make his appointment, this is no way interfered with this transaction.  Plaintiff alleges he was discriminated against a second time as he left the premises, however he had already completed his transaction at that point, and was merely exiting the premises.  Again, Plaintiff was not deprived any of the rights enumerated under § 1981.

Plaintiff alleges a third violation occurred the next day, June 22, 2016, the day of his previously scheduled appointment with Access.  This allegation also fails because, according to Plaintiff's own allegations, he successfully completed his appointment with Access, and the alleged discriminatory conduct occurred after the transaction was completed, as he was exiting the building.  So, even if the UPS employee's conduct can be considered discriminatory, the UPS employee did not interfere with the Plaintiff's right to contract with Access, which was the only party Plaintiff contracted with, or made an attempt to contract with.

At the time the Plaintiff was passing through the lobby, he was not engaged in any of the protected activities pursuant to § 1981.  See, e.g., Lorenz v. Managing Director, St. Luke's Hosp., 2010 WL 4922267 (S.D.N.Y. Nov. 5, 2010).  In Lorenz, the plaintiff alleged that hospital security guards "harassed, abusively treated and terrorized" him "merely because he was sitting in the lobby or need[ed] to use the toilet.'"  Id. at *1.  While the plaintiff alleged this abusive treatment was the result of "ethnic bias," which the court stated was not covered under § 1981, the court held that even if ethnic bias were covered, the plaintiff was not engaged in any protected activity while he was sitting in the lobby or using the bathroom.

Plaintiff seems to suggest that his right to contract was obstructed because he did not attend an appointment with Access that he scheduled for two months later in August 2016. (SAC at ¶ 45.)  Plaintiff alleges he did not attend the appointment because he feared that Brooks and Rivera would "racially harass" him again.  (Id.)  Notably, Plaintiff alleges he was racially harassed on June 21, 2018, but this did not prevent him from returning to the premises the next day, June 22, 2018.  There is no explanation in the SAC as to why Plaintiff was purportedly afraid to return to the premises in August 2016, two months after the alleged incidents, but was not afraid to return on June 22, 2018, one day after the first alleged incident.

Plaintiff cannot in any case set forth a claim for discrimination under § 1981 for his appointment in August 2016, where he never set forth on the premises.  Plaintiff must allege that he was "actually prevented, not merely deterred, from making a purchase or receiving a service after attempting to do so."  Farmer v. American Home Medical Equipment and Services, Inc., 2018 WL 878367 at *5 (E.D. Pa. Feb. 14, 2018)(citations omitted).  If Plaintiff never went to the premises to attend his appointment in August 2016, then he never made an attempt to receive any service from Access in the first place, and he obviously could not have been prevented from doing so.  Plaintiff must allege the "actual loss of a contract interest, not merely the possible loss of future contract opportunities."  Bishop, 414 F.Supp2d at 393.

Plaintiff also apparently suggests in the SAC that UPS discriminated against him because its employee refused to provide security services to him in response to Brooks's alleged conduct. This claim fails because the Plaintiff did not have, and did not attempt to enter into, a contractual relationship with UPS, or any of the other enumerated activities under § 1981.  Unlike with a restaurant or retail store, Plaintiff cannot claim a contractual relationship with UPS because none existed.

Plaintiff moreover cannot attempt to "bootstrap" his discrimination claim by asserting that the UPS employee's alleged conduct, because it was discriminatory, obstructed his § 1981

rights.  As the court held in <u>Farmer</u>, in order to prove the third element of a § 1981 claim, plaintiff must produce evidence of something more than the same type of racially based, discriminatory conduct sufficient to support the second element of a § 1981 prima facie case. <u>Farmer v. American Home Medical Equipment and Services, Inc.</u>, 2018 WL 878367 at *5 (E.D. Pa. Feb. 14, 2018)(citations omitted).

To the extent the Plaintiff is claiming that UPS interfered with his right to the full and equal benefit of a law or proceeding, Plaintiff fails to allege any law or proceeding that UPS deprived him of, and Plaintiff cannot conflate the alleged discriminatory conduct by the UPS employee or NYSARC employee with the denial of this right.  By way of comparison, the court in <u>Bishop</u> found that the plaintiff had adequately asserted a violation of this right, where the plaintiff claimed that security guards assaulted him and detained him against his will, and set forth claims for assault, battery, and false imprisonment, among others.  <u>See</u> <u>Bishop</u>, at 394. Plaintiff cites to no such violation here, and the claim therefore fails.

C.  <u>The UPS Employee Was Not Acting Within the Scope of His Employment and UPS Cannot be held liable</u>

"The Second Circuit has held that the doctrine of *respondeat superior* applies to § 1981 claims."  <u>Bishop v. Best Buy</u>, Co. Inc. 2010 WL 4159566 at *6 (S.D.N.Y. Oct. 13, 2010)(citing <u>Tomka v. Seiler Corp.</u>, 66 F.3d 1295, 1316 (2nd Cir. 1995).  "Under New York law, the doctrine 'renders an employer vicariously liable for a tort committed by an employee while acting within the scope of his employment,' *but not 'for torts committed by the employee for personal motives unrelated to the furtherance of the employer's business.'"* <u>Id.</u> (citing <u>Tomka</u>, 66 F.3d at 1317) (emphasis supplied).  "An employee's act is within the scope of his or her employment if the purpose of the act is, at least in part, to further the employer's business, and if the act is not

unexpected in view of the employee's duties." <u>Davis v. Megabus Northeast LLC</u>, 301 F.Supp.3d 105, 111 (D.D.C. 2018) (quoting <u>Floyd Mayers</u>, 732 F.Supp. at 246).

The Court in <u>Bishop</u> held that a security guard was acting within the scope of his employment where plaintiff alleged the security guard discriminated against him while shopping at the defendant's retail store. Plaintiff claimed the security guard attempted to check his receipt to ascertain whether he had stolen from the defendant's store. This act was plainly within the scope of the security guard's duties, which plaintiff argued included "asset protection and sales receipt verification programs." <u>Bishop</u> at 391.

Plaintiff's discrimination claim here therefore fails on the additional grounds that the UPS employee was not acting within the scope of his employment when the alleged conduct occurred, and any discriminatory actions by its employee cannot be attributed to UPS. Plaintiff alleges that Brooks laughed when Rivera uttered slurs against the Plaintiff, and also stated that "he ain't going to do nothing" during the alleged second incident. Even assuming these acts are discriminatory, neither of them fell within the scope of Brooks's duties as a security officer, which was to maintain the safety of the premises. To the extent Brooks did engage in discriminatory behavior, these acts *were* unexpected, in so far as they were not connected in any way to the implementation of his duties.

### III.    Plaintiff's § 1985 Conspiracy Claim Fails as a Matter of Law

Plaintiff's claim for § 1985 conspiracy fails because the predicate § 1981 claim is subject to dismissal, and there can be no conspiracy where there is no underlying constitutional violation. A conspiracy claim under 42 U.S.C. § 1985(3) has four elements: (1) a conspiracy, (2) for the purpose of depriving any person or class of persons of the equal protection of the laws or of equal privileges and immunities under the laws, (3) an act in furtherance of the conspiracy, and (4) whereby a person is injured in his person or property or deprived of a right or privilege of

a citizen. In addition, the conspiracy must be motivated by some class-based animus. Iqbal v. Hasty, 490 F.3d 143, 176 (2d Cir.2007) (citations omitted).

"Section 1985(3) "provides no substantive rights itself to the class conspired against,' instead the rights allegedly violated must be found in another source, such as the Constitution or a federal law." Goonewardena v. North Shore Long Island Jewish health System, 2012 WL 7802351 at *11 (E.D.N.Y. Nov. 5, 2012) (quoting United Bhd. Of Carpenters & Joiners of Am. V. Scott, 463 U.S. 825, 833-34, 103 S.Ct. 3352 77 L.Ed.2d 1049 (1983); accord Morpurgo v. Inc. Village of Sag Harbor, 697 F.Supp.2d 309, 339 (E.D.N.Y. 2010).

Where a plaintiff fails to state a federal law claim, he cannot assert a claim for conspiracy pursuant to 1985(3). See Gooneewardena, 2012 WL 7802351 at *12. As discussed above, Plaintiff alleges he was treated improperly by UPS's employee, but he fails to allege that he was denied the right to make a contract, sue, or give evidence because of his race or national origin. Because the predicate federal claim fails, Plaintiff's conspiracy claim must also fail.

Moreover, Plaintiff has failed to allege that any UPS employee was involved in the alleged conspiracy. Plaintiff goes to great lengths to describe email correspondence related to the investigation into the alleged incident, but none of the emails were sent or received by any UPS employee, and Plaintiff does not assert that any UPS employee took any action with respect to the investigation. Plaintiff alleges that one of NYSARC's employees "suspected" that Brooks was not being completely up front about the incident, but according to the SAC, these suspicions were never confirmed. The fact that one of the investigators may have had this suspicion is woefully inadequate to state a conspiracy claim. Plaintiff's sole basis for this claim seems to be that the investigation's findings contradict his version of events.

## IV.    Plaintiff's NYCHRL Claims Fail as a Matter of Law

A.  Plaintiff's NYCHRL 8-107(4) fails because UPS cannot be held liable for the alleged actions of its employee

As an initial matter, UPS cannot be held liable for the alleged actions of its employee Justin Brooks because as discussed above, any alleged discriminatory conduct was outside the scope of his employment with UPS.   Moreover, the NYCHRL imposes strict liability on employers only for discriminatory acts of *managerial employees*.   Garrigan v. Ruby Tuesday, Inc. 2014 WL2134613 at *6 (S.D.N.Y. May 22, 2014)(citing NYCHRL § 8-107(3); Zakrzewska v. New School, 928 N.E.2d 1035, 1040 (N.Y. 2010).

Plaintiff does not allege that UPS employee was a manager or supervisor, and in fact he was not.  As indicated in the annexed employment records, (**Exhibit B**), Justin Brooks was hired as a security officer in June 2015, and was paid at the rate of $10.00 per hour.  He was a non-exempt employee, meaning that under federal and state law, he was entitled to overtime because his position did not include supervisory authority or other discretionary responsibilities.  Because Brooks was not a manager, Plaintiff must allege that UPS had notice of a propensity for this alleged behavior, but Plaintiff fails to do so.

B.  Plaintiff's NYCHRL claims fail on the merits

New York City Human Rights Law § 8-107(4) forbids discrimination in public accommodation, however "stray derogatory remarks, without more, do not constitute evidence of discrimination."   Wecker v. City of New York, 134 A.D.3d 474 (1st Dept. 2015)("The few comments plaintiff claims a DHS worker made regarding his disability and race do not establish discriminatory intent, as stray derogatory remarks, without more, do not constitute evidence of discrimination."); see also Fruchtman v. City of New York, 129 A.D.3d 500 (1st Dept. 2015)(where plaintiff alleged co-workers made gender-based comments at place of employment, court finding that "stray comments, without more, are insufficient to establish discrimination.")

7191948v.2

As outlined above, Plaintiff alleges that UPS's employee laughed when NYSARC employee Sonny Rivera allegedly made racial slurs against him. Plaintiff also alleges that Brooks made a statement that "he ain't going to do nothing to you." Plaintiff does not allege that he was denied any service or accommodation. Plaintiff travelled freely through the building lobby on his way to the Access office where he scheduled his medical appointment. Plaintiff returned to the premises in order to attend the appointment. UPS's employee did not interfere with either of these transactions, and did not deny him any right or privilege.

Plaintiff's claim that he did not return for the August 2016 appointment out of fear he would be harassed is undermined by the fact that he had already returned to the premises on a prior occasion, the very next day after the first alleged incident when Plaintiff alleges the second incident occurred. Plaintiff's claim that he did not return in August 2016 out of fear of being harassed fails because he must have actually been discriminated against, and the fact that he never was subjects this claim to dismissal.

C. Plaintiff's claim for aiding and abetting under the NYCHRL fails

Plaintiff's claim for aiding and abetting under 8-107(7) also fails as against UPS. First, there is no case law that stands for the proposition that by laughing, an individual or his employer may be held liable for aiding and abetting discrimination. While the Plaintiff seems to suggest that UPS's employee somehow had a duty to "protect" the plaintiff from the NYSARC employee's alleged conduct, he only had a duty to maintain the security of the premises. He had no legal obligation to police the alleged behavior of other employees on the premises, unless their behavior somehow posed a threat to security, which was plainly not the case here.

Moreover, the claims for retaliation and aiding and abetting are derivative of the underlying alleged discriminatory conduct, and are subject to dismissal on this basis. As indicated above, Plaintiff alleges the NYSARC employee made certain stray derogatory comments, which, without more, is insufficient to state a claim. There can be no claim for aiding

13

and abetting where the underlying conduct on which these claims are based does not rise to the level of discrimination under federal or state law.

      D. <u>Plaintiff's claim for retaliation under the NYCHRL fails</u>

Plaintiff alleges that NYSARC hired a third-party to "investigate" Plaintiff, and that the investigator left him voicemails on two days and "surveilled social media activity" related to the Plaintiff. (SAC at ¶ 44.) Notably, Plaintiff fails to specify how many voicemails were left. Plaintiff only alleges that NYSARC hired the investigator, and this appears to be the sole basis for Plaintiff's retaliation claim under 8-107(7). Because there is no factual allegation against UPS for retaliation, this claim must be dismissed as against UPS.

Moreover, the facts supporting this claim are insufficient to support a claim for retaliation. First, Plaintiff's claim that the investigator "surveilled" social media activity "related" to the Plaintiff is so vague that it is impossible to glean exactly what the Plaintiff claims the investigator did, although it would appear he simply viewed online material related to the incident posted publicly by Plaintiff himself. Plaintiff provides no facts in support of this allegation, and this claim falls well short of the <u>Twombly/Iqbal</u> standard, subjecting it to dismissal. <u>Bell Atlantic Corp v. Twombly</u>, 550 U.S. 544 (2007); <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009). As well, it appears that the investigator called the plaintiff in order to conduct a neutral third-party investigation of the claim, and as noted, Plaintiff does not say how many calls he received, whether it was one, two, or more. Because there was no discriminatory or retaliatory intent behind the phone calls, the retaliation claim fails.

The activity that the Plaintiff alleges codefendant engaged in is moreover insufficient to state a claim for retaliation under NYCHRL 807(7). To state a claim for retaliation, a plaintiff must allege that he suffered an action that would be reasonably likely to deter a person from engaging in the protected activity. <u>Brightman v. Prison Health Serv., Inc.</u> 108 A.D.3d 739, 739-40, 970 N.Y.s.2d 789 (2nd Dept. 2013).

14

Plaintiff alleges that after making his complaint, he received calls on two different days from an investigator, and was somehow aware that the investigator viewed online reports of the incident.  There is no set of circumstances under which this activity would deter any reasonable person from making a complaint for discrimination.  Plaintiff's main issue with the investigator's alleged actions is that he had requested that NYSARC refrain from giving out his contact information, and the fact NYSARC gave the information to the investigator was, in Plaintiff's mind, a violation of this request.  While this may constitute a breach of etiquette, it is a far cry from a constitutional violation.

**V.    Plaintiff's Claim for Negligent Supervision Fails**

"A claim based on negligent hiring and supervision requires a showing that defendant[ ] knew of the employee's propensity to [commit the alleged acts] or that defendant[ ] should have known of such propensity had [it] conducted an adequate hiring *885 procedure' " (Honohan v. Martin's Food of S. Burlington, 255 A.D.2d 627, 628, 679 N.Y.S.2d 478 [1998], (quoting Ray v. County of Delaware, 239 A.D.2d 755, 757, 657 N.Y.S.2d 808 [1997]; see Steinborn v. Himmel, 9 A.D.3d 531, 533, 780 N.Y.S.2d 412 [2004]).

First, UPS cannot be held liable for this claim because as discussed above, the conduct the Plaintiff alleges Justin Brooks engaged in does not rise to the level of a violation under federal or state law.  Even assuming that Brooks's behavior was discriminatory, Plaintiff has failed to allege that UPS was aware that Brooks had a propensity for engaging in this type of behavior prior to the incidents alleged in the SAC.  As indicated in the annexed employment records, there was nothing in Brooks's background that would indicate any propensity for this behavior, and this claim must also be dismissed.

**VI.    The Court Should Decline to Exercise Jurisdiction Over the State Claims**

Under 28 U.S.C. § 1367(a), "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are

15

so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United State Constitution."  A district court, however, may "decline to exercise its supplemental jurisdiction if the 'district court has dismissed all claims over which it has original jurisdiction.'"  Cushing v. Moore, 970 F.2d 1103, 1106 (2d Cir. 1992)(quoting 28 U.S.C. § 1367(c)(3)).  In fact, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims."  Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350 n. 7 (1988); Valencia v. Lee, 316 F.3d 299, 306 (2d Cir. 2003).

If the Court dismisses the plaintiff's federal claims under 42 U.S.C. §§ 1981 and 1985, it should also exercise its power to decline supplemental jurisdiction over the state claims against UPS.

## **CONCLUSION**

For all of the foregoing reasons, this Court should dismiss all of the claims asserted against UPS pursuant to F.R.C.P. Rule 12(b)(6).


Dated:    White Plains, New York
              September 14, 2018

                          Respectfully submitted,

                 WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

                          By: /s/ Joseph P. Wodarski
                              Joseph P. Wodarski (JW 0557)
                              Attorneys for Defendant
                              UNIVERSAL PROTECTION SERVICE
                              1133 Westchester Avenue
                              White Plains, New York 10604
                              (914) 323-7000
                              File No. 20147.00019