UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MICHAEL BENZINGER,

Plaintiff,

-v.-

NYSARC, INC. NEW YORK CITY
CHAPTER, CBRE, INC., and
UNIVERSAL PROTECTION SERVICE,
LLC,

Defendants.

18 Civ. 2709 (KPF)

**<u>OPINION AND ORDER</u>**

KATHERINE POLK FAILLA, District Judge:

Plaintiff Michael Benzinger brings suit against Defendants NYSARC, Inc.
New York City Chapter ("AHRC"), CBRE, Inc. ("CBRE"), and Universal
Protection Services ("UPS") (collectively, "Defendants") alleging discrimination
on the basis of race arising out of several encounters in the lobby of 83 Maiden
Lane in lower Manhattan. Plaintiff alleges six causes of action against all
Defendants, claiming violations of three provisions of the New York City Human
Rights Law ("NYCHRL"), N.Y.C. Admin. Code §§ 8-107(4), 8-107(6), and 8-
107(7); the common-law tort of negligent retention, and two federal anti-
discrimination statutes, 42 U.S.C. §§ 1981 and 1985. Defendant UPS moves to
dismiss all counts against it on the basis of failure to state a claim. For the
reasons set forth in the remainder of this Opinion, the Court grants the motion
with respect to Plaintiff's federal claims, the negligent retention claim, and the
NYCHRL § 8-107(7) claim, and denies the motion with respect to Plaintiff's
claims under NYCHRL §§ 8-107(4) and 8-107(6).

# BACKGROUND[1]

## A. Factual Background

### 1. The Parties

Plaintiff is an Asian-American man who resides in Queens, New York. (SAC ¶¶ 2-3). Defendant AHRC is a New York corporation with its principal place of business at 83 Maiden Lane. (*Id.* at ¶¶ 3-4). Defendant CBRE is a New York corporation that provides building management services to 83 Maiden Lane. (*Id.* at ¶¶ 6-8). Defendant UPS is a New York limited liability company that contracted to provide security services to 83 Maiden Lane. (*Id.* at ¶¶ 9-11).

### 2. The June 21, 2016 Lobby Incidents

On June 21, 2016, Plaintiff entered the lobby of 83 Maiden Lane to make an appointment with Access Community Health Center ("Access"), a tenant of the building. (SAC ¶¶ 13-16, 20). While Plaintiff was in the lobby, a porter, Sammy Rivera, repeatedly uttered "Ni Hao," a Mandarin greeting, to him. (*Id.* at ¶ 20). Plaintiff informed Rivera that he was Korean, not Chinese, and after Rivera asked how to say hello in Korean, provided the Korean word. (*Id.*).

---

[1] The facts in this section are drawn principally from the Second Amended ("SAC"), the well-pleaded allegations of which are taken as true for purposes of this motion. (Dkt. #35). The Court focuses on the factual allegations concerning movant UPS.

For ease of reference, the Court refers to Defendant UPS's Memorandum of Law in Support of the Motion to Dismiss as "Def. Br." (Dkt. #42); to Plaintiff's Memorandum of Law in Opposition to the Motion to Dismiss as "Pl. Opp." (Dkt. #47); and to UPS's Reply Memorandum of Law in Support of the Motion to Dismiss as "Def. Reply" (Dkt. #48). Plaintiff's opposition brief does not comply with Rule 4.B of the Court's Individual Rules of Practice in Civil Cases, which limits opposition briefs to 25 pages. While the Court has considered the arguments contained therein, future submissions that exceed the Court's page limits will be stricken and disregarded.

Rivera repeated the Korean greeting and then walked to the building's security desk and spoke with Justin Brooks, a UPS employee and the security guard on duty. (*Id.*). Plaintiff alleges that within his earshot, Rivera said to Brooks, "That chink says he's not Chinese, he said he's Korean. How can I tell the difference? All chinks look the same." (*Id.*). He further alleges that both Rivera and Brooks laughed after this comment. (*Id.*). Plaintiff proceeded to visit Access, but, upon returning to the lobby, heard Rivera utter further racial epithets, including "ching chong." (*Id.* at ¶ 21). Brooks and Rivera laughed together in response to these comments. (*Id.*).

### 3. The June 22, 2016 Report and Lobby Incident

On June 22, 2016, Plaintiff returned to 83 Maiden Lane for an appointment with Access and scheduled a follow-up appointment for August 2016. (SAC ¶ 22). Plaintiff also inquired at the front desk in the lobby where he could file a complaint regarding Rivera's and Brooks's behavior the prior day, and he was directed to AHRC's offices in the building. (*Id.*). Plaintiff spoke with Steve Williams, AHRC's employee relations manager, who informed him that Pamela Minkoff, another AHRC employee, would follow up regarding investigating the claims and potential disciplinary action. (*Id.*). Upon departing and returning to the lobby, Plaintiff again crossed paths with Rivera and Brooks. (*Id.* at ¶ 23). Plaintiff states that Rivera glared at him and called out "What's up boss?" to him. (*Id.*). Brooks, who was standing nearby remarked of Plaintiff, "He ain't gonna say nothing to you" (the "June 22 Remark"), and Rivera and Brooks both laughed. (*Id.*). Williams reached out to

Plaintiff later that day, and Plaintiff informed him of this additional incident. (*Id.* at ¶ 24).

### 4.    The AHRC Investigation

Minkoff investigated the incident and spoke with Brooks at some point between June 22, 2016, and July 7, 2016. (SAC ¶ 35). Brooks initially denied that anything had occurred. (*Id.*). After receiving an email from Plaintiff, Minkoff informed Dawn Shillingford, a CBRE employee, that she believed that Brooks knew more than to which he had admitted in their prior meeting. (*Id.* at ¶¶ 34-35). Minkoff and Shillingford met with Rivera on July 7, 2016, to discuss the incident and then spoke with Brooks a second time. (*Id.* at ¶ 35). After this second conversation, Brooks wrote an incident report on UPS letterhead, in which he provided his description of the incident and its aftermath. (*Id.*). He wrote that an individual of Asian descent "came into the building ... and was greeted by the porter in a language that he didn't speak[,] he was offended by the approach. The issue went to [Minkoff]. We had a meeting to discuss the matter." (*Id.*).

On July 14, 2016, AHRC concluded its investigation and informed Plaintiff that it could not substantiate his allegations. (SAC ¶¶ 36-44). Plaintiff states that he received an email from Williams in response to this conclusion, in which Williams expressed surprise at the lack of punishment. (*Id.* at ¶ 42). Plaintiff alleges that he did not attend his August 2016 follow-up appointment at Access, as he feared further racial harassment from Rivera and Brooks. (*Id.* at ¶ 45).

**B. Procedural Background**

On February 28, 2018, Plaintiff filed this suit in New York State Supreme Court against AHRC and CBRE, alleging discrimination on the basis of race, and on March 28, 2018, CBRE filed a notice of removal to this Court. (Dkt. #6). On March 18, 2018, Plaintiff filed a First Amended Complaint adding UPS, Brooks's employer, as a defendant. (Dkt. #18). On July 10, 2018, UPS filed a letter requesting leave to file a motion to dismiss the claims against it. (Dkt. #30). On July 31, 2018, the Court held a pre-motion conference, during which it granted Plaintiff leave to file a Second Amended Complaint (the "SAC"), and ordered Defendants to move or otherwise respond to the SAC on or before September 14, 2018. (Dkt. #34).

On August 10, 2018, Plaintiff filed the SAC. (Dkt. #35). On September 14, 2018, Defendants CBRE and AHRC filed answers, and Defendant UPS moved to dismiss all claims against it. (Dkt. #38, 39, 40-21). Plaintiff filed his opposition to UPS's motion on October 15, 2018. (Dkt. #47). UPS replied to Plaintiff's opposition submission on October 29, 2018. (Dkt. #48). Accordingly, the motion is fully briefed and ripe for decision.

## DISCUSSION

**A. Plaintiff Fails to State a Claim Under 42 U.S.C. § 1981**

**1. Applicable Law**

**a. Motions to Dismiss Under Rule 12(b)(6)**

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must "draw all reasonable inferences in Plaintiff's

favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted); *see also Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (internal quotation marks omitted)).  A plaintiff is entitled to relief if he alleges "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007); *see also In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) ("While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to nudge plaintiff's claims across the line from conceivable to plausible." (internal quotation marks omitted) (citing *Twombly*, 550 U.S. at 570)).

A court is not bound to accept "conclusory allegations or legal conclusions masquerading as factual conclusions." *Rolon* v. *Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (internal quotation marks omitted); *see also Harris* v. *Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("[A]lthough a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 678)).  Moreover, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of

6

entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

**b. Claims Under 42 U.S.C. § 1981**

To succeed on a Section 1981 claim, a plaintiff must sufficiently allege that "[i] the plaintiff is a member of a racial minority; [ii] [there was] an intent to discriminate on the basis of race by the defendant; and [iii] the discrimination concerned one or more of the activities enumerated in the statute (i.e., make and enforce contracts, sue and be sued, give evidence, etc.)." *Mian* v. *Donaldson, Lufkin & Jenrette Secs. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993). Section 1981 proscribes discrimination in the "enjoyment of benefits, privileges, terms, and conditions of a contractual relationship[.]" *Robinson* v. *Concentra Health Servs., Inc.*, 781 F.3d 42, 45 (2d Cir. 2015); 42 U.S.C. § 1981. "To establish a violation of [Section] 1981, a plaintiff must show that a defendant's acts were purposefully discriminatory and racially motivated." *Weiss* v. *La Suisse*, 141 F. App'x 31, 33 (2d Cir. 2005) (summary order) (internal citations omitted).

**2. Discussion**

Plaintiff argues that the allegations of the SAC are sufficient to state a claim under Section 1981 because (i) Plaintiff is a member of a racial minority; (ii) Brooks intended to discriminate against him by laughing at Rivera's comments and by making the June 22 Remark; and (iii) this discrimination prevented Plaintiff from enjoying his contracted-for experience with Access, or in the alternative, denied Plaintiff full and equal benefit of the laws of New

York.  (Pl. Opp. 5-13).  UPS, in turn, argues that the SAC is deficient for three

reasons.  (Def. Br. 5-10).  *First*, Plaintiff fails to plead that Brooks's conduct

rose to the level of discrimination.  (*Id.* at 6).  *Second*, Plaintiff has not alleged

the violation of an enumerated right protected by Section 1981.  (*Id.* at 7-9).

*Finally*, Plaintiff fails to allege that Brooks was acting within the scope of his

employment, such that UPS can be held liable.  (*Id.* at 9-10).  The Court

addresses each of these arguments in turn.

### a. Plaintiff Adequately Pleads an Intent to Discriminate

The Court concludes that the allegations against Brooks are sufficient at

this stage to show an intent to discriminate.  Plaintiff alleges that the laughter

at two separate incidents of racial abuse by Rivera on June 21, 2016, and the

June 22 Remark are all evidence of Brooks's intent to discriminate.  (Pl.

Opp. 6).  UPS counters that laughter in response to racial abuse is insufficient

to state a claim for discrimination, and that the June 22 Remark has no racial

connotation that can be fairly inferred.  While the Court agrees with UPS

regarding the latter, it finds that the two instances of laughter in response to

racist slurs are enough to show an intent to discriminate.

Courts have found laughter at racial slurs to be evidence of

discriminatory intent in the employment context.  *See, e.g.*, *Swinton* v. *Potomac

Corp.*, 270 F.3d 794, 801-10 (9th Cir. 2001) (referring to supervisor's laughter

at racist jokes as evidence of discrimination); *Rodrigues* v. *Motorworld Auto.

Grp., Inc.*, No. 3:16 Civ. 1674, 2017 WL 1036477, at *1 (M.D. Pa. Mar. 17,

2017) (finding a supervisor's laughter evidence of intent to discriminate).  In

*Chuang* v. *University of California Davis, Board of Trustees*, which arose in the context of a motion for summary judgment, the Ninth Circuit found that a dean's laughter in response to the same racial slur constituted adequate evidence of discriminatory intent in the employment discrimination context. 225 F.3d 1115, 1128 (9th Cir. 2000) ("For purposes of summary judgment, Dean Williams's laughing response to this remark establishes adequate evidence of discriminatory intent on his part."). UPS states that the cases are distinguishable, as the *Chuang* plaintiffs provided numerous examples of indirect evidence of discrimination, racist remarks by other individuals, and adverse employment action by the school. (*See* Def. Reply 2). While UPS is correct that numerous instances of discrimination were alleged, the Ninth Circuit's finding regarding the individual dean was that the laughing response to this slur was itself evidence of discriminatory intent. *Chuang*, 225 F.3d at 1128. Here, Plaintiff alleges that Brooks laughed in response to Rivera's use of "chink" as Plaintiff entered the lobby and to Rivera's use of the words "ching chong" as Plaintiff left. (Pl. Opp. 6). While the exact point at which laughter at racially insensitive remarks constitutes evidence of intent to discriminate is unnecessary to define, the Court finds that allegations of repeated laughter in response to racist slurs in two separate incidents is sufficient to plead an intent to discriminate.

By contrast, the Court does not find that the allegations concerning the June 22 Remark suffice to show an intent to discriminate. The words "he ain't gonna say nothing to you" contain no reference to race, and Brooks took no

action towards Plaintiff at that time.  Plaintiff cites *Ezell* v. *Edwards Theatres, Inc.*, No. 104 Civ. 6533 (SMS), 2006 WL 3782698 (E.D. Cal. Dec. 21, 2006), and *Feacher* v. *Intercontinental Hotels Group*, 563 F. Supp. 2d 389 (N.D.N.Y. 2008), for the proposition that words or conduct without express reference to race can constitute racial discrimination.  (Pl. Opp. 7-8).  However, and as UPS notes, in both cases the words were spoken alongside racially discriminatory conduct. (*See* Def. Reply 2-3).  Here, the June 22 Remark came after Rivera said, "What's up, boss?," itself not a racially explicit remark.  (SAC ¶ 35).  Plaintiff argues that the June 22 Remark implied that Asians were physically inferior to other races, and that this implication can be discerned from the context in which the statement was made.  (Pl. Opp. 8 ("[W]hen put into context of the repeated incitement from the day before, the phrase suggests Brooks held a derogatory stereotype that Asians, particularly Asian males, are physically inferior to other races.")).  This allegation is nowhere in the SAC, however, and the Court sees no grounds for inferring such a meaning from a statement that refers neither to Asian-Americans nor to physical attributes.

The Court declines to find that the June 22 Remark is evidence of an intent to discriminate.  However, given the Court's finding that the allegations concerning Brooks's laughter at Rivera's explicitly racist remarks are adequate, the Court turns to the third element of the Section 1981 claim, i.e., whether the conduct concerned one or more of the activities enumerated in the statute.

### b. Plaintiff Has Failed to Plead the Denial of a Protected Right

Plaintiff offers two rights that he alleges Brooks's conduct violated: (i) his right to a contracted-for experience with Access, and (ii) his right to full and equal benefit of the laws, which he alleges was impaired by Brooks's alleged violation of the NYCHRL. (Pl. Opp. 8-13). Neither claim suffices. As described herein, the Court finds that the SAC does not adequately allege a violation of a contract between Plaintiff and Access and, further, that violations of the NYCHRL do not create a cause of action under Section 1981.

### i. The Contracted-for Experience Claim

Plaintiff cites to numerous cases for the principle that customers can bring claims against businesses they patronize when discriminatory conduct prevents them from engaging in the experience for which they contracted. (*See* Pl. Opp. 8-9 (citing *Lizardo* v. *Denny's, Inc.*, 2000 WL 976808 (N.D.N.Y. 2000), *aff'd*, 270 F.3d 94 (2d Cir. 2001))). This argument, however, misses a critical point: Plaintiff fails to allege the existence of a contractual relationship with UPS.

The cases Plaintiff cites universally involve discrimination by the businesses themselves, and not by third parties. As a sister court in this District has explained, "liability under [Section] 1981 for interference with a third-party contract attaches only to persons who actually had the power or authority to prevent the plaintiffs from contracting with the third party." *Ginx, Inc.* v. *Soho All.*, 720 F. Supp. 2d 342, 358 (S.D.N.Y. 2010) (citing *Harris* v.

*Allstate Ins. Co.*, 300 F.3d 1183, 1197 (10th Cir. 2002) (requiring that a plaintiff bringing a Section 1981 claim for interference with a third-party contract demonstrate "that the party both possessed sufficient authority to significantly interfere with the individual's ability to obtain contracts with third parties, and that the party actually exercised that authority to the individual's detriment")); *see also Robledo* v. *Bond No. 9*, 965 F. Supp. 2d 470, 477 (S.D.N.Y. 2013) (observing that "Section 1981 protects against the interference with a third-party contract, but liability only attaches to persons who actually had the power or authority to prevent the plaintiff from entering into a contract with the third party").  Plaintiff makes no allegation that Brooks was aware of Plaintiff's contract with Access, or that he or anyone else at UPS possessed sufficient authority to interfere with Plaintiff's ability to contract with Access.

Plaintiff cites a single, out-of-district case for the principle that a third party can be liable for obstructing a plaintiff's right to contract.  (*See* Pl. Opp. 11).  However, in that case, *Vakharia* v. *Swedish Covenant Hospital*, the third party was the plaintiff's employer, which, in terminating her employment, prevented her from making contracts with her patients.  *See* 765 F. Supp. 461, 471 (N.D. Ill. 1991).  To summarize this case is to distinguish it, inasmuch as the defendant in *Vakharia* clearly had the power to prevent a contract between the plaintiff and others.  Here, however, Brooks lacked authority over or even awareness of the relationship between Plaintiff and Access.  Plaintiff has thus failed to allege that UPS can be held liable for interference with Plaintiff's contract.

Furthermore, Plaintiff has failed to plead that the contractual relationship with Access included his experience while walking through the lobby of 83 Maiden Lane. As UPS notes, several courts in this District have held that walking through a lobby is not part of a patron's contract with a business. (Def. Reply 4). In *Bishop* v. *Toys "R" Us-NY LLC*, 414 F. Supp. 2d 385 (S.D.N.Y. 2006), *aff'd sub nom. Bishop* v. *Toys R Us*, 385 F. App'x 38 (2d Cir. 2010) (summary order), the district court dismissed Section 1981 claims relating to a security guard's detention of the plaintiff as he exited the store. The court found that once the plaintiff's purchase had occurred, the contractual relationship with the store ended. *See id.* at 392.

Plaintiff rejoins that to receive services from Access, one must walk through the lobby, and reasons from this fact that the relationship must necessarily extend to entrances and exits. (Pl. Opp. 11). The Court concludes that while blocking physical access to the lobby might prevent the formation of a contract with Access, Plaintiff has failed to allege that the contractual relationship with Access extended to interpersonal dealings he might have in the lobby while entering or exiting the building. *Cf. Rogers* v. *Elliott,* 135 F. Supp. 2d 1312, 1315 (N.D. Ga. 2001) ("Virtually all federal courts that have analyzed Section 1981 claims in the retail merchandise context have required the plaintiff to show that he was actually prevented from making a purchase.").

Plaintiff was not prevented from entering or exiting Access at any point on either day. The Court does not find that Plaintiff has adequately alleged that Brooks's conduct creates third-party liability for interference with

contract, nor that this conduct interfered with any contract between Plaintiff and Access.[2]  The Court thus turns to Plaintiff's alternative argument: that violation of the NYCHRL creates a cause of action under Section 1981.

### ii.     The NYCHRL Claim

Plaintiff argues that since Section 1981 guarantees the "'full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens[,]' 42 U.S.C. § 1981(a), the violation of the New York City Human Rights Law can itself create a claim of discrimination under Section 1981."  (Pl. Opp. 11-13).  UPS responds that Plaintiff has failed to state a claim under the NYCHRL and, in the alternative, that Section 1981's enumerated right requirement cannot be satisfied by the violation of a parallel anti-discrimination statute.  (Def. Reply 5).  The Court will address the merits of Plaintiff's NYCHRL claims later in this Opinion.  At this point, the Court concludes generally that Plaintiff cannot bootstrap a Section 1981 claim onto

---

[2]     Plaintiff does not argue that his decision not to return to Access for his follow-up appointment in August 2016 gives rise to a Section 1981 claim.  The Court finds that Plaintiff must plead he was directly denied the benefits of his contract, not that the conduct affected his decision not to continue engagement with a contractual partner.  In the retail context, for example, courts have found that a plaintiff's allegation that he was scared away from returning goods is insufficient to state a Section 1981 claim.  *See, e.g.*, *Garrett* v. *Tandy Corp.,* 295 F.3d 94, 102 (1st Cir. 2002) ("The naked assertion that a party might have elected to return a previously purchased product had he believed the environment to be more welcoming is simply too ephemeral a hook from which to hang a cause of action under [Section] 1981.").

Additionally, even were the Court to consider Plaintiff's follow-up appointment a sufficiently definite element of his contract with Access, the SAC still fails to plead that Brooks had the power to prevent Plaintiff from contracting with Access.

an NYCHRL violation, because the "full and equal benefit clause" of Section 1981 requires a connection to state (and not municipal) law.

To establish a violation of Section 1981's guarantee of "full and equal benefit" of laws, a plaintiff must "[i] allege racial animus ...; [ii] identify a relevant 'law or proceeding for the security of persons and property;' and [iii] allege that defendants deprived them of the 'full and equal benefit' thereof." *Bishop*, 414 F. Supp. 2d at 393 (citing *Phillip* v. *Univ. of Rochester,* 316 F.3d 291, 298 (2d Cir. 2003)). "Few cases in this circuit or elsewhere arise under the 'equal benefit' clause of § 1981." *Pierre* v. *J.C. Penney Co.*, 340 F. Supp. 2d 308, 310 (E.D.N.Y. 2004). The Second Circuit, unlike other circuits, has declined to find that the equal benefit clause requires state action. *Phillip*, 316 F.3d at 295-96. Instead, it left for the district courts the task of "defin[ing] the universe of laws and proceedings" that Section 1981's protections would encompass, "believing this task best resolved case by case." *Id.* at 298. The Court finds that local laws are not within this universe.

While *Phillip* concluded that Section 1981 full and equal benefit claims did not require a connection to state action, its language still requires a connection to state law. "[T]he phrasing of the equal benefit clause does suggest that there must be some nexus between a claim and the state or its activities." *Id.* at 295; *see also Pierre*, 340 F. Supp. at 311 (examining whether "plaintiff's claims [we]re sufficient to allege a nexus between defendants and a *state* law" (emphasis added)). Plaintiff has alleged no nexus to state law, as the

15

sole allegation discussed in this context is a violation the NYCHRL, a local anti-discrimination ordinance.

Notably, in each of the cases that Plaintiff has cited (*see* Pl. Opp. 10-13), the "full and equal benefit claim" rested on violations of state law. *See, e.g.*, *Bishop*, 414 F. Supp. 2d at 394 (plaintiff "alleged false imprisonment, false arrest, assault, battery, trespass to chattels, and violations of state civil rights laws"); *Pierre*, 340 F. Supp. 2d at 311 ("Plaintiff points to a number of state laws, the violation of which might satisfy the nexus requirement."). In *Phillip*, the Second Circuit dismissed concerns over "the federalization of *state* tort law," reasoning that Section 1981 had already federalized state contract law. *See Phillip*, 316 F.3d at 297-98 (emphasis added). However, this result maintained consistency across separate areas of law in a single state. By contrast, a federalization of local anti-discrimination laws would result in a splintering of federal protections across federal judicial districts. While *Phillip* brought racially motivated torts within the protection of federal law, it did so with the understanding that these were rights enshrined in state law. The Court does not believe the *Phillip* Court considered Section 1981 liability to fall within the discretion of the policymakers of the thousands of municipalities and local governments across this Circuit. Accordingly, it concludes that Plaintiff cannot base a cause of action under Section 1981 on the violation of a law of New York City.

In sum, because Plaintiff has failed to allege the violation of an enumerated right protected by Section 1981, his claim fails.

**B.    Plaintiff Fails to State a Claim Under 42 U.S.C. § 1985**

　　**1.    Applicable Law**

　　　　**a.    Section 1985**

Similar logic compels dismissal of Plaintiff's claim under 42 U.S.C.

§ 1985.  A conspiracy claim under Section 1985(3) contains four elements:

"[i] a conspiracy, [ii] for the purpose of depriving any person ... of the equal

protection of the laws ..., [iii] an act in furtherance of the conspiracy, and

[iv] whereby a person is injured in his person or property or deprived of a right

or privilege of a citizen." *Iqbal* v. *Hasty*, 490 F.3d 143, 176 (2d Cir. 2007), *rev'd*

*on other grounds by Aschroft* v. *Iqbal*, 556 U.S. 662 (2009).  To succeed, a

plaintiff must also show that there was "some racial, or perhaps otherwise

class-based, invidiously discriminatory animus behind the conspirators'

action." *Griffin* v. *Breckenridge*, 403 U.S. 88, 102 (1971).  A plaintiff "must

[further] provide some factual basis supporting a meeting of the minds, such as

that defendants entered into an agreement, express or tacit, to achieve the

unlawful end[,]" along with "some details of time and place and the alleged

effects of the conspiracy." *Romer* v. *Morgenthau*, 119 F. Supp. 2d 346, 363

(S.D.N.Y. 2000) (internal quotation marks and citations omitted).  Section

1985(3) "provides no substantial rights itself to the class conspired against.

The rights, privileges, and immunities that § 1985(3) vindicates must be found

elsewhere[.]" *United Bhd. of Carpenters & Joiners of Am.* v. *Scott*, 463 U.S. 825,

833 (1983) (internal citations and quotation marks omitted).

## 2. Discussion

Plaintiff alleges that Brooks and Rivera engaged in a conspiracy to deprive him of his rights under Section 1981. (Pl. Opp. 13-14). As the Court has discussed above, Plaintiff has failed to plead the denial of a right protected by Section 1981. "As the plaintiff fails to allege a predicate federal right applicable to the facts alleged in his complaint, defendants' motion to dismiss plaintiff's Section 1985(3) claim should be granted." *Goonewardena* v. *N. Shore Long Island Jewish Health Sys.*, No. 11 Civ. 2456 (MKB) (LB), 2012 WL 7802351, at *12 (E.D.N.Y. Nov. 5, 2012), *report and recommendation adopted*, No. 11 Civ. 2456 (MKB), 2013 WL 1211496 (E.D.N.Y. Mar. 25, 2013), *aff'd*, 597 F. App'x 19 (2d Cir. 2015) (summary order).

Additionally, the Court finds that Plaintiff has failed to allege a conspiracy between Brooks and the AHRC investigators. Plaintiff attempts to argue that Brooks engaged in a separate conspiracy with Minkoff to deny him rights under Section 1981. (*See* Pl. Opp. 14). In support, Plaintiff alleges that Minkoff told her supervisors that she suspected Brooks knew more than he let on and re-interviewed Brooks based on this suspicion; Brooks later wrote up an incident report providing a version of events that differed from Plaintiff's. (*Id.* at 14-15). The Court finds that these allegations fail to demonstrate any meeting of the minds to further an unlawful end. Plaintiff's allegation that Minkoff knew that "Brooks was lying to cover up his discrimination of Benzinger" is asserted in a wholly conclusory fashion. (*Id.* at 15). Beyond the allegation that Minkoff doubted Brooks's initial lack of recollection and

accepted his later version of events, Plaintiff pleads no facts suggesting that Brooks and Minkoff ever reached an agreement to further unlawful ends. Where, as here, "a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted). The allegations of a conspiracy, at least with respect to Brooks and UPS, are devoid of particularized facts and cannot survive a motion to dismiss. *See, e.g.*, *Webb* v. *Goord*, 340 F.3d 105, 111 (2d Cir. 2003) ("The plaintiffs have not alleged, except in the most conclusory fashion, that any ... meeting of the minds occurred among ... the defendants. Their conspiracy allegation must therefore fail.").

## C.     The Court Will Exercise Supplemental Jurisdiction Over Plaintiff's NYCHRL and Negligent Retention Claims

Because the Court has dismissed Plaintiff's federal claims, only his NYCHRL and negligent retention claims remain. UPS asks the Court to decline the exercise of supplemental jurisdiction over these claims. (Def. Br. 15-16). *See* 28 U.S.C. § 1367(c)(3). Despite submitting an opposition well in excess of this Court's page-limit rules, Plaintiff has not offered any argument regarding jurisdiction in the event of dismissal of the federal claims. Nevertheless, the Court finds that the relevant factors weigh in favor of retaining jurisdiction.

"Once a district court's discretion is triggered under [28 U.S.C.] § 1367(c)(3), it balances the traditional 'values of [i] judicial economy, [ii] convenience, [iii] fairness, and [iv] comity,' in deciding whether to exercise

jurisdiction." *Kolari* v. *N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ.* v. *Cohill*, 484 U.S. 343, 350 (1988)); *accord United Mine Workers of Am.* v. *Gibbs*, 383 U.S. 715, 726-27 (1966). Generally, these four factors weigh in favor of dismissal after dismissing all federal claims at the pleading stage. *See Cohill*, 484 U.S. at 350 n.7 ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine ... will point toward declining to exercise jurisdiction over the remaining state-law claims."). However, in this case, two defendants remain even if the Court dismisses the claims against UPS. Rather than force the refiling of the case against UPS in a separate court, with the attendant risks of inconsistent judgments among the defendants, the Court retains jurisdiction over the state law claims in the interests of judicial economy and convenience, and now proceeds to consider those claims on the merits.

**D.     Plaintiff States a Claim Under the NYCHRL**

**1.     UPS Is Liable Under the NYCHRL for Brooks's Conduct**

As a preliminary matter, UPS argues that strict liability under the NYCHRL only attaches to managerial employees. (Def Br. 12). However, UPS misperceives NYCHRL § 8-107(13). This subsection expressly limits this managerial employee requirement to violations of NYCHRL §§ 8-107(1) and 8-107(2). *See id.* at § 8-107(13) ("An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions 1 and 2

of this section.").  Here, Plaintiff alleges violations of NYCHRL §§ 8-107(4), 8-107(6) and 8-107(7) (*see* Pl. Opp. 18-30), which impose liability on an employer for all employees.

### 2.    Plaintiff States a Claim Under NYCHRL § 8-107(4)

#### a.    Applicable Law

NYCHRL § 8-107(4) prohibits discrimination in public accommodations. The statute "makes it an 'unlawful discriminatory practice' for any [employee or agent] of a public accommodation to deny anyone 'the full and equal enjoyment ... of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation.'" *De La Fuente* v. *Sherry Netherland, Inc.*, No. 17 Civ. 4759 (PAE), 2018 WL 1597649, at *8 (S.D.N.Y. Mar. 27, 2018).  The statute also forbids any employee of a public accommodation from "directly or indirectly" making any declaration that the "patronage or custom of any person is unwelcome, objectionable, not acceptable, undesired or unsolicited because of such person's actual or perceived race."  NYCHRL § 8-107(4)(a)(2).  New York courts have made clear that these anti-discrimination ordinances are to be construed broadly.  *See, e.g.*, *Bennett* v. *Health Mgmt. Sys., Inc.*, 936 N.Y.S.2d 112, 116 (1st Dep't 2011) (observing that courts must liberally construe all NYCHRL provisions due to the statute's "uniquely broad and remedial purposes"); *cf. Mihalik* v. *Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 112 (2d Cir. 2013) ("In accordance with the Restoration Act's rules of construction, New York courts have broadly interpreted the NYCHRL's retaliation provisions.").

### b. Discussion

Plaintiff has adequately alleged that Brooks's conduct was an indirect declaration that Plaintiff was unwelcome in 83 Maiden Lane. UPS does not dispute here that the building was a place of public accommodation. Instead, it argues for dismissal on the basis that Plaintiff has alleged nothing more than stray remarks, and stray remarks cannot sustain a claim for discrimination. (*See* Def Br. 12-13; Def. Reply 7-8). However, the cases on which it relies arose at the summary judgment stage. In *Fruchtman* v. *City of New York*, the First Department upheld a grant of summary judgment in favor of an employer in a case of gender discrimination, finding that the employer had provided compelling evidence of nondiscriminatory reasons for the dismissal and finding that stray remarks with no apparent connection to any employment action failed to demonstrate gender bias. 11 N.Y.S.3d 582, 584 (1st Dep't 2015). In *Wecker* v. *City of New York*, the First Department cited *Fruchtman* in finding that the defendants had provided nondiscriminatory reasons for their actions. 20 N.Y.S.3d 364 (1st Dep't 2015). The Court does not find these cases to be comparable. UPS has not argued that there are legitimate non-discriminatory reasons for Brooks to laugh at Rivera's use of racial slurs. More fundamentally, the Court readily understands why Plaintiff would consider such conduct to be an indirect declaration that he was unwelcome due to his race. NYCHRL § 8-107(4)(a)(2).

Plaintiff spends much of his briefing suggesting that Brooks incited Rivera and offering his own analysis of Brooks's June 22 Remark. (Pl. Opp. 20-

22).  As UPS notes, the argument that Brooks's laughter constituted incitement was not advanced until Plaintiff's opposition.  (Def. Reply 1 n.3).  The Court agrees; in any event, it does not find that Brooks incited Rivera, nor does it (as discussed above) agree that the June 22 Remark was racial in nature.  However, the Court does not find that such allegations are necessary to allow the claim to proceed under the NYCHRL.

The New York City Human Rights Commission has found that a comment by a taxi driver to a gay couple to stop kissing while they were in his cab could "on its own…establish a violation of the NYCHRL." *In re Commission on Human Rights ex. rel. Spitzer* v. *Dahbi*, OATH Ind. No. 883/15, 2016 WL 7106071, at *5 (N.Y.C. Com. Hum. Rts. July 7, 2016).  The Commission found that this statement "constitute[d] a 'declaration ... that the patronage' of Complainants [was] 'unwelcome, objectionable or not acceptable, desired or solicited.'" *Id.* (citing NYCHRL § 8-107(4)).  Considering the broad language of the statute and the New York courts' (and Second Circuit's) admonition to take into account the NYCHRL's "uniquely broad and remedial purposes," *see* *Bennett*, 936 N.Y.S.2d at 116, the Court concludes that Brooks's laughter at explicit racial slurs, if proven, could constitute an indirect declaration that Plaintiff's patronage of 83 Maiden Lane was unwelcome or objectionable.

### 3.    Plaintiff States a Claim Under NYCHRL § 8-107(6)

NYCHRL § 8-107(6) makes it unlawful for a defendant to aid, abet, incite, compel, or coerce another into any of the acts that are unlawful under the NYCHRL.  NYCHRL § 8-107(6).  Here, the Court finds that Plaintiff has

adequately alleged aiding and abetting liability as to UPS for its alleged failure

to investigate and respond to this incident properly.

While UPS argues that Plaintiff's claim for aiding and abetting is circular,

in that it relies on the underlying conduct (Def. Br. 13-14), Plaintiff correctly

notes that aiding and abetting liability can also arise from an inadequate

response to the discriminatory conduct (Pl. Opp. 27-28).  Courts have

consistently held that an employer's failure to take remedial action for the

discriminatory conduct of employees can create liability under the NYCHRL:

> Plaintiff's allegations that [Defendants] failed to investigate or take remedial action in response to Plaintiff's complaints provides a sufficient basis for an aiding and abetting claim under NYCHRL.  *See Morgan* v. *NYS Atty. Gen.'s Office,* 2013 WL 491525 at *13 (S.D.N.Y. Feb. 08, 2013) ("[A]ider-and-abettor liability [under NYCHRL] may extend to supervisors who failed to investigate or take appropriate remedial measures despite being informed about the existence of alleged discriminatory conduct.") (citing *Feingold* v. *New York,* 366 F.3d 138, 157-59 (2d Cir. 2004)); *Anderson* v. *Davis Polk & Wardwell LLP,* 850 F. Supp. 2d 392, 404 (S.D.N.Y. 2012) (noting that "an employee may be held personally liable as an aider and abettor for failing to take remedial action in response to a complaint of sexual harassment under the ... NYCHRL") (citing *Patane* v. *Clark,* 508 F.3d 106, 115 n.7 (2d Cir. 2007)); *Regan* v. *Benchmark Co. LLC,* 2012 WL 692056, at *14 (S.D.N.Y. Mar. 1, 2012) (finding that plaintiff sufficiently stated aiding and abetting claim under NYCHRL, based, in part, on allegation that individual managers "refused to take remedial action when [plaintiff] complained about discriminatory treatment").

*Cid* v. *ASA Inst. of Bus. & Computer Tech., Inc.*, No. 12 Civ. 2947 (DLI) (VMS),

2013 WL 1193056, at *6 (E.D.N.Y. Mar. 22, 2013).

While acknowledging that an investigation was undertaken by AHRC (though not UPS), Plaintiff alleges that the investigation was designed to protect Rivera and Brooks, and that UPS took no remedial action to discipline Brooks. (SAC ¶¶ 40-45). The Court notes that Plaintiff has specifically alleged a lack of remedial action by any of the Defendants and further alleges that an AHRC manager informed Plaintiff that he (the manager) was surprised by the absence of punishments. (SAC ¶ 42). Plaintiff's allegations that Defendants cooperated in the investigation, coupled with UPS's statement that the AHRC investigation was conducted with its awareness and support, state a claim that UPS failed adequately to investigate and respond to Plaintiff's allegation. (*See* Def. Reply 6 ("[T]here is no question the [AHRC] investigation included Brooks.")).[3]

Unlike Plaintiff's conspiracy claim under Section 1985, the NYCHRL does not require a meeting of the minds or agreement to further unlawful ends. The statute merely requires a failure to take appropriate action. *See, e.g.*, *Morgan*, 2013 WL 491525, at *13. Plaintiff has adequately alleged facts that demonstrate aiding and abetting liability on the part of UPS for failing to investigate and remediate Plaintiff's allegations of discriminatory conduct.

### 4.    Plaintiff Fails to State a Claim Under NYCHRL § 8-107(7)

NYCHRL § 8-107(7) creates liability where a defendant "retaliate[s] or discriminate[s] in any manner against any person because such person has opposed any practice forbidden under this chapter." NYCHRL § 8-107(7). To

---

[3]    UPS states in the same paragraph that Brooks was suspended pending the outcome of the investigation. (Def. Reply 6). This fact does not appear in the SAC, and it cannot be considered by the Court at the motion to dismiss stage.

make out the claim, Plaintiff must show that (i) he has engaged in protected activity; (ii) Defendant was aware that he participated in such activity; (iii) he suffered an adverse action based upon his activity; and (iv) there is a causal connection between the protected activity and the adverse action. *See Forrest* v. *Jewish Guild for the Blind*, 3 N.Y.3d 295, 312-13 (2004). It is undisputed that Plaintiff has alleged protected activity in the form of reporting Brooks and Rivera. Plaintiff further alleges two types of adverse action. *First*, he alleges that UPS retaliated against him by failing to suspend Brooks, leaving him free to retaliate against others. (Pl. Opp. 29). *Second*, Plaintiff alleges that by denying that an incident occurred and writing a false report, Brooks engaged in retaliation. (*Id.* at 30). The Court finds these actions, even if proven, do not suffice to state a claim for retaliation.

Plaintiff's arguments in this regard run into the immediate difficulty that nearly every retaliation case arises in the employment context. Indeed, Plaintiff's own description of the elements of the offense states that the Plaintiff must show "a causal connection exist[s] between the protected activity and the adverse *employment* action." (Pl. Opp. 28 (emphasis added)). In each of the cases Plaintiff has cited (*see id.* at 28-30), the plaintiff alleged that an employer took some action specifically directed at them in response their reporting. *See e.g.*, *Williams* v. *New York City Hous. Auth*, 872 N.Y.S.2d 27 (1st Dep't 2009) ("[Plaintiff allege[d] that … she had to do work outside of her regular duties."). Putting aside that this incident occurred outside the employment context, Plaintiff has failed to allege that either Brooks's retention of his job or Brooks's

reporting of the incident was an adverse action towards Plaintiff based on his protected conduct. Indeed, neither of these actions was directed at Plaintiff. To be sure, Plaintiff has alleged that neither Brooks nor UPS responded adequately to the incident; while this may suffice to plead aiding and abetting liability under the NYCHRL, it does not suffice to state a claim for retaliation.

## E.     Plaintiff Fails to State a Claim for Negligent Retention

Plaintiff's final claim can be dispensed with quickly. To state a claim for negligent retention, a plaintiff must allege that a defendant "knew of the employee's propensity to [commit the alleged misconduct] or that defendants should have known of such propensity had they conducted an adequate hiring procedure." *Ray* v. *Cty. of Delaware*, 657 N.Y.S.2d 808 (3d Dep't 1997). Plaintiff makes no such allegation. In Plaintiff's opposition, he states that UPS knew of Brooks's propensity for harassment once Plaintiff reported the initial incident to Williams on June 21, 2016. (Pl. Opp. 31-32). Significantly, however, Plaintiff provides the wrong date in his opposition, as he alleges in the SAC that he spoke with Williams on June 22. (SAC ¶ 22).

Using the correct date, Plaintiff alleges that UPS was on notice after the meeting with Williams on June 22, and should have acted prior to the second lobby incident on June 22. (Pl. Opp. 32). The problem with this claim is clear from the preceding sentence: Plaintiff presumably is stating that UPS could have learned from Williams, an AHRC employee, of the June 21 incident and disciplined or terminated Brooks in the time between when Plaintiff left Williams's office and entered the lobby. The Court does not consider this a

plausible allegation that UPS knew or should have known of Brooks's alleged propensity to violate the anti-discrimination laws and dismisses Plaintiff's negligent retention claim.

## CONCLUSION

For the reasons above, UPS's motion to dismiss is GRANTED in part and DENIED in part. Plaintiff's negligent retention, NYCHRL § 8-107(7), and Sections 1981 and 1985 claims are dismissed with prejudice. Plaintiff's NYCHRL §§ 8-107(4) and 8-107(6) claims continue.

The parties are hereby ORDERED to provide a joint letter and case management plan in accordance with this Court's Individual Rules of Practice in Civil Cases to the Court on or before July 12, 2019.

The Clerk of Court is directed to terminate the motion at docket entry 40.

SO ORDERED.

Dated:      June 21, 2019
            New York, New York

_____
        KATHERINE POLK FAILLA
        United States District Judge